JOHNSON, Respondent, vs. CITY OF SUPERIOR, Appellant.

*April 7 — April 25, 1899.*

*Personal injuries: Municipal corporations: Defective street: Runaway horse: Contributory negligence: Court and jury: New trial: Instructions to jury.*

In an action against a city to recover for personal injuries received by running over an embankment while riding in a buggy drawn by a single horse, the jury brought in a general verdict for the plaintiff and answered two special questions submitted by the court in effect, that the horse driven by him was, at the time of the injury, under his control, and that he was not chargeable with contributory negligence. Plaintiff's own testimony was very unsatisfactory and inconclusive, and he admitted that the horse was running until within two or three blocks of the place of injury. In this he was contradicted by a number of witnesses, who saw the injury, and who testified the horse was running uncontrolled at the time. He also testified that he intended to drive to the house of one of his witnesses, but admitted he proceeded on a fast trot past the place of his destination and suffered the accident complained of. Only two witnesses testified that the horse was not running at the time of the injury, and one of these had, a short time prior to giving his testimony, stated to the city attorney that the horse was running as fast as he could go. *Held*, that the great preponderance of evidence was toward a conclusion, either that the horse was running away and beyond the control of the driver, or that the plaintiff was guilty of most palpable negligence. It was therefore error to refuse to set aside a verdict in plaintiff's favor and grant a new trial.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

This is an action to recover damages for injuries received by plaintiff's running over an embankment at the intersection of Sixth street and Catlin avenue in the city of *Superior*, while riding in a buggy drawn by a single horse. The main defense was that the horse was running away, and that plaintiff was guilty of contributory negligence. The jury brought in a general verdict for plaintiff, assessing his damages at $500, and also answered two questions submitted by the court to the effect that the horse in question was under plaintiff's control at the time of the accident, and that he was not chargeable with contributory negligence. The court denied a motion for a new trial, and the defendant appeals from the judgment entered upon the verdict.

For the appellant there was a brief by *T. L. McIntosh*, and oral argument by *A. C. Titus.*

For the respondent the cause was submitted on the brief of *O'Brien & Vaughn.*

BARDEEN, J. Defendant attacks the judgment in this case on the ground that the evidence overwhelmingly establishes the fact that at the time of the accident the horse was in a condition of fright, and running away. The rule has long been settled in this state that there can be no recovery against a town or city in consequence of injuries sustained by reason of a runaway or uncontrollable horse unless caused by the negligence of the municipality. *Jackson v. Bellevieu*, 30 Wis. 250; *Ritger v. Milwaukee*, 99 Wis. 190.

The horse in question was standing on the corner of Ogden avenue and Fifth street, facing north. Plaintiff was sitting in the buggy while the owner went into a blacksmith shop. As he came out and attempted to get into the buggy, the horse became frightened, turned around on Ogden avenue, ran south to Sixth street, and thence east on that street ten

blocks to Catlin avenue, and plunged over an embankment in the line of Sixth street east of the east line of said avenue. There can be no possible doubt of the fact that the horse was beyond the plaintiff's control, and running away, as it passed east from Ogden avenue on Sixth street. Some of the witnesses claim that one of the reins was under the horse's leg, another that it was on the ground, and still another that the reins were under the horse's tail. All the witnesses speaking on the subject agree that the horse was running as it turned on to Sixth street, and for some distance east. Three witnesses, who were working on the corner of Weeks avenue and Sixth street, within two blocks of the place of the accident, say that they watched the horse as it passed, that it was running about as fast as it could go, and that it did not slack up any before the accident. Another witness, who was driving a dray at a point east of Catlin avenue, about half a block distant, had his attention called to the horse by some children who were riding with him. The horse was coming down Sixth street on the run. The buggy was swaying from one side to the other, and the horse continued at that gait until it went over the dump. Opposed to this was the testimony of one Enger, who was about a block west of the place of the accident, and who said the horse was trotting past fast. It appears, however, that this witness, a short time prior to giving his testimony, had been interviewed by the city attorney, to whom he stated the horse was running as fast as he could go. The attorney made a written memorandum at the time, and gave his testimony on the trial. Another witness for plaintiff (Mrs. Grenner) lived on the corner of Catlin avenue and Sixth street. She claimed she was looking out the window, and saw the horse first about two blocks away; that he was coming on an ordinary trot.

The plaintiff's testimony was very unsatisfactory and inconclusive. He claimed the horse ran down Fifth street until within two or three blocks of Catlin avenue, and then

turned on Sixth street.  In this he is contradicted by at least
a half dozen witnesses.  He claimed also that the horse was
"all right" as he turned on to Sixth street, and that he in-
tended to drive to the house of the witness Enger.  The lat-
ter lived at a point on Catlin avenue south of Sixth street,
and to reach his house it would be necessary to turn south
when that avenue was reached.  Instead of doing so, he pro-
ceeded, as he admits, on a fast trot, past the place of his des-
tination, and suffered the accident complained of.  Sixth
street was level until the east line of Catlin avenue was
reached, where the declivity or embankment over which he
drove was located.  One of plaintiff's witnesses testified that
this condition of the street could be seen fifty feet away.  In
all human probability a person seated in a buggy could see
it three or four times that distance.  Upon this testimony
the jury found that plaintiff had the horse under control,
and that he was not guilty of negligence.  Every potential
fact in the case points to the opposite conclusion.  Either
the horse was beyond his control, or he was guilty of the
most palpable negligence.  Whichever conclusion is adopted
is fatal to the judgment.  The manner of the accident gives
strong savor to the claim that plaintiff was so much under
the influence of intoxicants as not to have been able to prop-
erly guide his horse.  The great preponderance of testimony
from witnesses who were in a position to plainly see, and
who watched the conduct of the horse, is toward the con-
clusion that it was running away, and beyond the control of
the driver.  This fact, supported as it is by all the proba-
bilities of the case, should have been sufficient to have caused
the trial court to set aside the verdict and grant a new trial.

    Some criticisms are made to the charge of the court to the
jury.  At one place the court said: "Was plaintiff charge-
able with negligence — that is, want of ordinary care — *that
directly contributed* to cause the accident?"  At another he
tells them that, if they do not "find that plaintiff was charge-

able with contributory negligence that *contributed proxi-mately* to cause the accident, you will find for the plaintiff." Some confusion is likely to arise from the indiscriminate use of the expressions "directly contributed" and "contributed proximately." The rule is that, if the plaintiff in such cases is guilty of any want of ordinary care contributing to the injury, he cannot recover. The practice of introducing qual-ifying words and phrases is likely to lead to indistinctness and confusion. Even under the most favorable conditions, the jury sometimes fail to appreciate the force of the court's charge. It is better, therefore, to adopt plain and simple language in the statement of legal propositions, and not to attempt to vary or improve upon precedents that have re-ceived judicial sanction.

Other errors are assigned, but the view we have taken of the testimony renders a discussion of them unnecessary.

*By the Court.*— The judgment of the superior court of Douglas county is reversed, and the case is remanded for a new trial.