COLLINS, by guardian *ad litem,* Respondent, vs. CITY OF JANESVILLE, Appellant.

*March 21—April 17, 1903.*

*New trial: Verdict against evidence: Discretion: Credibility of evidence: Appeal: Municipal corporations: Injury from defective sidewalk: Contributory negligence: Prior knowledge of defect.*

1. The mere fact that the trial judge is convinced that the verdict is against the preponderance of the evidence does not make it his judicial duty to grant a new trial.
2. The decision of the trial court that the verdict, though in its opinion against the weight of the evidence, is nevertheless not wholly unsupported by credible evidence, is entitled, on appeal, to the same respect as its decision upon any other matter of fact.
3. The mere fact that the testimony of the plaintiff, a young girl, given on successive trials, was not always the same as to all the particulars of the accident in question, does not render it, as matter of law, wholly unworthy of belief; and where such testimony, though contrary to much evidence which the jury might reasonably believe, is not intrinsically improbable and is corroborated by other testimony, the decision of the trial court sustaining a verdict in her favor should not be disturbed.
4. Where, at the time of stepping into a hole in the sidewalk, of which she had previous knowledge, a young girl was intent upon looking for her companions who had run on before her, and failed to see the hole for that reason and also because she thought it was further along, the question of contributory negligence was one for the jury.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Action to recover compensation for personal injury. The claim of the plaintiff, as set forth in her complaint and maintained by her evidence upon the trial, is that on June 5, 1895, while walking, in the exercise of ordinary care, on a public sidewalk located on the east side of Cherry street in the defendant city, she stepped into a hole in such walk, of such a character as to render the way insufficient and out of repair, which condition had existed for such a length of time that

the city authorities ought to have known of and remedied the same; that by reason of such occurrence she lacerated the muscles and tendons of her right leg near the lower part thereof, particularly about the ankle, fractured the small bone of such leg near the ankle joint, and fell upon the walk, bruising her person to some extent other than as particularly specified. All the conditions precedent to the commencement of the action were pleaded and established on the trial. The answer of the defendant put in issue all allegations of the complaint respecting the sidewalk being out of repair, the alleged defect therein having been known to the city authorities for a sufficient length of time to charge the city with negligence in not remedying the same, and the allegations as to plaintiff's having been injured upon the sidewalk at all, and also pleaded contributory negligence.

Plaintiff was about thirteen years of age at the time of the accident. There was no question upon the evidence but that at the time alleged she was injured quite seriously. The principal dispute was as to whether the injury occurred upon the sidewalk and by reason of the defect therein, or the plaintiff, while playing with some companions, climbed upon a fence at a point some fifty feet therefrom and fell from that place and thereby received the injury.

The verdict of the jury was in plaintiff's favor for the sum of $2,500. Upon a motion duly made to vacate the verdict and grant a new trial because the same was contrary to the evidence, the court denied the motion on condition of plaintiff's remitting from the damages found in her favor all except the amount of $800. The condition was submitted to by plaintiff, and judgment was rendered upon the verdict. From that this appeal was taken.

The cause was tried three times prior to the trial in question, upon each of which occasions a verdict was given in plaintiff's favor and judgment was rendered thereupon, and upon appeal therefrom was reversed by this court. The first

verdict was for $1,500. The trial as to that is reviewed in 96 Wis. 461. The second verdict was for $2,500. A history of that will be found reviewed in 107 Wis. 436, 83 N. W. 695. The third verdict was $2,800. The judgment rendered thereon will be found reviewed in 111 Wis. 348, 87 N. W. 241, 1087.

Prior to the first trial plaintiff was examined otherwise than as a witness and was examined upon each of the trials, the result being that upon five different occasions, under oath, she told the story of her injury. The motion for a nonsuit and the motion to set aside the last verdict and grant a new trial were based largely upon inconsistencies in the several narrations given by plaintiff as aforesaid. Her first story was that she, with two companions, Matie Ennis and Sarah Denning, while on their way to the home of a Mr. Denning on the east side of Cherry street, met several little boys about 120 feet from the premises of Mr. Denning; that her companions accepted an invitation from the boys to play; that she declined upon the ground that her mother had forbidden her to play; that the children all proceeded north on the east side of Cherry street, plaintiff's companions running on before her, all except Matie Ennis quickly leaving her; that as she proceeded along she conversed with the Ennis girl; that when she arrived near the corner of Mr. Denning's property at a point where there was an alleyway to the right, she caught her foot in a hole in the sidewalk and fell down; that she was perfectly familiar with the condition of the sidewalk, having observed it on many previous occasions; that she thought, however, at the time in question, that the defect was further on; that her attention was diverted by watching the children at play; that when she fell the Ennis girl was a few feet from her and the two were conversing together; that none of the other children was in sight; and that after she fell she sat awhile and then got up and tried to walk and fell again, when she cried and the girls came back to her.

Upon the second occasion plaintiff told her story this way: She and the two little girls, Matie Ennis and Sarah Denning, while on their way to Mr. Denning's, met some little boys, and all except plaintiff commenced to play with them. She declined to play because her mother had forbidden her to do so. Her companions, with the other children, proceeded ahead of her at their play. Before she reached the place of the injury all of her companions were out of her sight, the girls having gone down an alley, which turned off to the right on the south side of Mr. Denning's property, the south line thereof being marked by a fence. When she arrived near the alley she stepped into a hole in the sidewalk and fell. In trying to get up she slipped and fell again. She then got upon her feet and went down the alley a short distance, when she fell again and commenced crying and calling for the girls to come back. At the time she fell there was no one in sight so far as she could remember. She was not looking for any holes in the sidewalk. She talked with Matie Ennis after the girls commenced playing, as she walked north on the sidewalk, but Matie soon ran off so fast that the conversation ceased. Matie and all the rest were out of sight, as indicated, at the time of the accident.

Upon the third occasion plaintiff's story was told substantially thus: While on her way to Mr. Denning's with Matie Ennis and Sarah Denning, they came up with some boys who invited them to play. The invitation was accepted by all except plaintiff. She declined upon the ground that her mother had forbidden her to play. The girls and boys proceeded at their play north on the sidewalk on the east side of Cherry street. There were three girls at this time. For a time after the playing commenced Matie Ennis remained near the plaintiff and but a short distance ahead of her,—so near that the two conversed together. Before the accident occurred, however, she proceeded so far ahead of plaintiff that the conversation ceased. Before the instant of the accident Matie turned

down the alley, and all the other girls and boys were out of plaintiff's sight. Near the corner of Mr. Denning's place, and where an alley turned off to the east, bounded by a fence on the north side thereof, plaintiff stepped into a hole and fell. At the time thereof her attention was diverted from the surface of the walk by reason of her endeavoring to see where her companions had gone to. On that account she did not see the hole in the walk, though she was perfectly familiar there-with. She did not think of the hole at the time. She sup-. posed it was a little further ahead. It was daylight when the accident occurred. After she fell she got up and fell again. She got up a second time, and taking hold of the fence pulled her foot out of the hole and then turned down the alley, going a few steps, when she fell again and commenced to cry, and called for the girls. One of them came promptly, and later the others came.

On the fourth occasion plaintiff's testimony was substantially as follows: While she was on her way to Mr. Denning's accompanied by Matie Ennis and Sarah Denning, they met some boys and all except plaintiff commenced playing, she declining because her mother had forbidden her to play. Maggie Ennis joined the company before this time. The children ran down the walk on the east side of Cherry street, plaintiff following them. Matie Ennis kept very near to plaintiff for a while, but later ceased to accompany her and turned down the alley on the south side of Mr. Denning's property. The alley turned off to the right and was bounded on the north by a fence. At the time of the accident all of the children were out of plaintiff's sight. At about the point where the alley turned off plaintiff caught her foot in a hole in the sidewalk and fell. She got up and took her foot out of the hole and turned down the alley, going a short distance, when she fell again and began to cry and call for help. There was no one around at the time. When she called the girls came back to her. She took hold of the fence at the time she pulled her

foot out of the hole. She went down the alley about ten feet before she fell. She was sure she did not go twenty-seven feet.

On the last trial the testimony of plaintiff was to this effect: As she was traveling north on the sidewalk on the east side of Cherry street, on her way to Mr. Denning's, accompanied by Matie Ennis and Sarah Denning, she met some boys who requested her and her companions to play. She declined because her mother had forbidden her to play. The other girls accepted the invitation. About that time Maggie Ennis joined the company. Plaintiff proceeded north on the sidewalk on her way to Mr. Denning's, following the other children, who were at play. They ran on ahead of her and before she arrived at the point where the accident occurred all disappeared, the girls having turned down an alley at the right on the south side of Mr. Denning's property, the alley being bounded on the north by a fence. When she arrived near the alley and while her attention was diverted from the walk by reason of endeavoring to see where her companions had gone, she stepped into a hole in the walk and fell forward, her foot coming in contact with the plank covering of the walk. She took hold of the fence and pulled her foot out of the hole and turned down the alley. She walked along the fence by taking hold thereof. She did not know at that time that the bone of her leg was fractured so she could not walk. After proceeding.down the alley a short distance she took her hands off the fence and immediately fell down. As she fell she began to cry and called for some one. Two of the girls came to her. She was going down the alley, she said, after her injury, in order to reach the back door of the Denning house. The place where she said she fell was some fifty feet from the walk.

The nature of the injury, as testified to by the physician who treated it, was as follows: A fracture of the fibula and an injury of the ankle joint, the fracture being about an inch

and a half above the ankle; a contusion and other troubles about the joint usually characterizing such injuries; a mark across the instep of the foot, which developed soon after the injury into a black and blue appearance over the instep and more or less up the side of the leg and all around the ankle, as usually happens in fractures about the ankle joint; a straining of the ligaments around the ankle; the injury, as a whole, being such as with a person of plaintiff's age usually is recovered from in about three weeks.

Plaintiff was corroborated by three witnesses as follows: John Smith, who resided on the opposite side of the street from where she claimed she first fell, testified that he saw her at first running slowly just outside the sidewalk; that she then stepped upon the sidewalk and after taking two or three steps thereon fell; that he saw her attempting to arise and saw a little boy and girl standing near her feet; that he did not think she was hurt but supposed the children were playing, hence in a minute or two gave his attention to his garden work; that when the girl fell she seemed to drop flat on her face; that he saw the two Ennis girls crossing the street further up toward Denning's about as plaintiff stepped upon the walk; that he did not see them go back to her; that when he first observed the other girls they were going faster than plaintiff when she received her injury. Mrs. Mary Smith testified that she saw plaintiff fall upon the sidewalk; that she saw her just as she fell; that plaintiff appeared to attempt to get up, then seemed to stoop down again; that witness thought she was playing; that she did not see plaintiff get up; that there were girls with her in plain sight; that they were playing with plaintiff when she fell; that she could not tell how many, but she thought two. Harry Kent, who was about ten years old at the time of the accident, testified that he saw plaintiff fall on the sidewalk; that he was back of the Barron house at a point about 100 feet north and east of the place of the accident; that he was looking around the corner of the

house at a sharp angle. The boy's line of vision was interrupted by a picket fence and some evergreen trees or bushes.

After the case in chief closed, it was opened and plaintiff was permitted to explain anew the circumstances of how the injury occurred, which she did, saying:

"I was going down the street, walking along watching the girls ahead. I caught my foot and fell; caught my foot in the hole in the sidewalk. I knew there was a hole in the sidewalk, but did not know it was just at that place or just where it was because I never stopped. My attention was directed to Maggie and Matie ahead. I was watching them at the time. The two girls were turning into the alley. I was watching them to see where they went."

There was evidence by a medical witness to the effect that the injury which plaintiff received was such as to cause instant pain and inability for her to use the injured member effectively in walking; also evidence that from where she fell by the fence, a distance of about fifty feet from the sidewalk, she was carried into the Denning house.

A motion was made for a nonsuit and denied. On the part of the defendant there was evidence given by the three girls that were playing as stated by plaintiff, to the effect that she joined in the play and that she received her injury by falling from the fence at the point where she said she last fell, and that she was injured by such fall. That she did not fall upon the sidewalk. They all admitted that they stated, soon after the accident, that plaintiff fell upon the sidewalk. They explained that by saying that they told a falsehood at plaintiff's request because she did not want her mother to know that she was playing when the accident occurred.

In denying the motion to set aside the verdict and grant a new trial the trial judge remarked that he was convinced that plaintiff had not established by a preponderance of the evidence that she was entitled to recover; that the weight of the testimony was against her claim; yet he was constrained to deny the motion because four juries had found in her favor

and the verdict in each instance had been approved by the learned judge who presided at the trial.

*F. C. Burpee,* city attorney, and *M. G. Jeffris,* of counsel, for the appellant.

For the respondent there was a brief by *J. J. Cunningham,* attorney, and *G. G. Sutherland,* of counsel, and oral argument by *Mr. Cunningham.*

MARSHALL, J. The first proposition submitted by appellant's counsel is that the court erred in not setting aside the verdict and granting a new trial upon deciding that it was not supported by the preponderance of the evidence. We are unable to agree with counsel on that. A motion for a new trial upon the ground that the verdict is contrary to the evidence is addressed to the sound discretion of the trial judge, and he is so supreme in that field that his decision is not subject to disturbance on appeal if there is any reasonable ground upon which it can be supported. *Parlin & O. Co. v. Angell,* 99 Wis. 297, 74 N. W. 777; *Larson v. Eau Claire,* 92 Wis. 86, 65 N. W. 731; *Lee v. C., St. P., M. & O. R.'Co.* 101 Wis. 352, 77 N. W. 714. It is elementary that it is for the trial court to decide as a matter of fact whether there are conflicting reasonable inferences from the evidence, indicating the existence of probabilities upon which a decision either way might be based (*Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573); and it is the exclusive province of the jury to decide in the first instance upon the comparative weight of such probabilities and whether the one so preponderates over the other as to produce conviction respecting the truth of the matter involved, and the conclusion reached by such jury must stand as infallible in fact and in law, subject to the discretionary authority of the trial court to set the same aside, and the authority of this court to see that such authority is not abused. While there are cases where it has been said that it is an abuse of discretion not to grant a new trial when the

great preponderance of the evidence is against the verdict of the jury (*Johnson v. Superior,* 103 Wis. 66, 78 N. W. 1100), it will be found upon close examination of the decisions in that regard that this court did not intend in any case to revise the decision of the trial judge upon a mere balancing of reasonable probabilities; but to hold that where such probabilities are all one way, precluding any sensible decision to the contrary, there is no room for the exercise of discretionary authority, strictly so called, because there is no basis for more than one decision. The moving party in such circumstances appeals not strictly to the discretionary power of the court for a favor, but stands in the attitude of one demanding a right. *Badger v. Janesville C. Mills,* 95 Wis. 599, 70 N. W. 687; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360; *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434; *Cawley v. La Crosse C. R. Co.* 101 Wis. 145, 77 N. W. 179; *O'Brien v. C., St. P., M. & O. R. Co.* 102 Wis. 628, 78 N. W. 1084. No more need be said, we apprehend, to show that the mere fact that the learned trial court reached the conviction as matter of fact that the verdict of the jury was clearly against the preponderance of the evidence, did not create a judicial duty to grant a new trial. If there were yet reasonable probabilities the other way upon which any person of common understanding, looking at the evidence considerately, might probably act, the way was open for the trial judge to grant or refuse a new trial as might seem to him proper, notwithstanding his own conviction as to the truth of the matter involved. It is only where judicial action can properly go but one way that there is a violation of judicial duty in acting contrary thereto in a matter commonly understood to be, or spoken of as, within the scope of discretionary authority. *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 79 N. W. 1081.

What has been said leads to the second proposition advanced by appellant's counsel, namely, that the verdict of the jury is without any credible evidence to support it, hence

should have been set aside as a matter of right, under the rule heretofore adverted to. On that subject we have the decision of the trial court in favor of respondent, and the same respect must be paid thereto as to its decision on any other matter of fact. *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573. True, the learned circuit judge did not believe, as he distinctly stated, the evidence on the part of respondent, but he at the same time in effect decided, as we have before indicated, that a view might reasonably be taken of the evidence which would support the verdict, and that decision must necessarily be overruled in a reversal of the judgment upon the ground now under discussion. When we look beyond the decision of the trial court to the evidence upon which it is based, we find that three witnesses positively corroborated the evidence of respondent that she fell upon the sidewalk, while there are three witnesses who testify directly or in effect to the contrary. The claim is made that the boy who said he saw the accident, while looking from his hiding place around the corner of the Barron house, cannot be believed reasonably, because his location was such that it was physically impossible for him to see the respondent at the instant she received her injury, if that occurred where she claims it did. The trial court evidently did not take that view, and so far as we can determine the truth of the matter from the evidence, aided by the plat showing the location of respondent, the boy, and the surrounding objects, appellant's counsel is not correct. A direct line from where the boy stood to where respondent claims she fell upon the sidewalk passed through a picket fence and was otherwise interrupted, but we are unable to reach the conclusion that it was so fully intercepted as to render it impossible for a person looking intently, as the boy evidently was because of the game that was in progress, making it important for him to watch for the other children, to observe what he said he did if the occurrence in fact took place. The other two persons who testified to seeing respond-

ent fall upon the walk do not agree, it is true, as to all the circumstances characterizing the occurrence, and neither of them agrees altogether with the testimony of respondent; nor does her testimony upon each occasion harmonize with that which she gave upon all other occasions when she testified to the matter under oath. But it is within the knowledge of us all that where several persons witness an accident and some time thereafter severally attempt to describe it, each intending to state truthfully just what occurred, they will differ very widely as to collateral matters while agreeing on the particular thing which impressed them at the time, the accident itself. It is just as well within our common knowledge that several relations of an occurrence involving the safety of a person, especially a child, made by such person, and extending over a period of several years, often, we may say generally, fail to harmonize on all the particulars while agreeing as to the occurrence itself. If rights were to be lost as a matter of course because of such infirmities of human memory, in a very large proportion of cases involving wrongs to be redressed the law would fail to furnish a remedy. But the administration of the law is not so infirm as that. It is competent for the trier or triers of issues of fact to reconcile conflicts in evidence if that can reasonably be done, and to reject evidence found to be irreconcilable, if that can reasonably be done, and so to reach a conclusion as to the right of the matter involved.

It is useless for us here to go into a careful analysis of the evidence in order to justify our conclusion that we ought not to overrule the decision of the trial court that the verdict complained of is not so clearly against the evidence as to leave no reasonable probability of truth to support it. We have already mentioned in a general way the most significant matters upon which appellant's counsel rely. They refer with great confidence to the evidence of the doctor, that the immediate effect of such an injury as the one respondent received is much pain and impaired ability to use the wounded mem-

ber. In our view of the case it is quite as significant that no evidence was produced showing that it would be physically impossible for a person to go a short distance, using the injured member under the circumstances testified to by respondent. No such evidence, we should say, could have been truthfully given, because it is, we may properly say, a common occurrence for a person injured substantially as respondent was to go a short distance aided partly by the injured member.

We have not deemed it necessary to discuss the evidence produced by appellant, because in the decision of the appeal it is only important to determine whether the evidence produced by the respondent is worthy of belief from any reasonable view thereof. In that we agree with the trial court. This is not a case where the verdict of the jury rests on the uncorroborated conflicting evidence of the interested party, opposed by much clear, credible evidence, as in *McCoy v. Milwaukee St. R. Co.* 82 Wis. 215, 52 N. W. 93, and similar cases. It has frequently been held, and is the true rule, that only where the evidence of the interested party is intrinsically improbable, even though it is all the evidence in support of the verdict and is contrary to much evidence which the jury might reasonably believe, that the appellate court is justified in holding that it is wholly unworthy of belief and overturning the decision of the trial court on that subject. *Hardy v. Milwaukee St. R. Co.* 89 Wis. 183, 61 N. W. 771; *Bading v. Milwaukee E. R. & L. Co.* 105 Wis. 480, 81 N. W. 861. The evidence of respondent here was neither intrinsically improbable nor uncorroborated, as we have sufficiently indicated.

A further point is made that the evidence of respondent conclusively discloses contributory negligence on her part under the rule laid down on the former appeal, 111 Wis. 348, 87 N. W. 241, 1087. On the contrary, the very element found wanting in that case to carry the controversy to the jury was supplied upon the trial now under review. The evidence upon the last trial showed that respondent was at the

time she was injured intent upon seeing where the children that ran on before her and disappeared down the alley had gone, and upon that account and by reason of the further fact that she thought the hole in the walk was a little further along, she failed to see it before stepping therein. Such circumstances, within the doctrine laid down upon the former appeal, sufficiently rebutted the presumption of negligence arising from the proof that respondent was familiar with the condition of the walk, to preclude holding as a matter of law that she remembered, or was inexcusably negligent in not remembering, the defect, and that she heedlessly walked into it. The case on that branch is quite as strong as *Crites v. New Richmond,* 98 Wis. 55, 73 N. W. 322, where the plaintiff failed to avoid a hole in a sidewalk, with which he was perfectly familiar, by reason of the fact that as he walked along an acquaintance called to him from the opposite side of the street.

*By the Court.*—The judgment is affirmed.