RIECK, Respondent, vs. CHICAGO & MILWAUKEE ELECTRIC RAILWAY COMPANY and others, Appellants.

*February 11—March 2, 1915.*

*Street railways: Negligent speed of car: Collision with automobile: Evidence: Weight and sufficiency: Trial: Questions for jury.*

1. Where credible witnesses for defendant testify to an independent fact and there is no evidence to the contrary their testimony cannot be disregarded; but if witnesses for the plaintiff testify to other matters which, if true, necessarily show that the testimony of defendant's witnesses is untrue, a jury question is presented.

2. Thus, in an action for personal injuries caused by an electric car striking the rear of an automobile in which plaintiff was riding, shortly after the automobile, coming from a side street or alley, had turned north on the track, the testimony of four witnesses for defendant that the electric car had stopped and discharged passengers after rounding a corner 175 feet south of such side street could not be true if, as plaintiff and his son positively testified, the car was not in sight when the automobile turned north; and it was possible that the car, if it was running at an excessive rate of speed and if it did not stop at the corner, might have been out of sight when the automobile turned north and

still have overtaken the automobile at the point where plaint-
iff's son testified the collision occurred. *Held*, that it could not
be said as matter of law that the car did stop at the corner.
The testimony for plaintiff not being inherently incredible, the
jury might find it true, although the evidence greatly prepon-
derated the other way.

APPEAL from an order of the circuit court for Milwaukee
county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Plaintiff brought this action in the civil court of Milwau-
kee county to recover damages for injuries alleged to have
been sustained as a result of a collision between an automobile
in which he was riding and an electric car of the defendant
company.

Fifth street in the city of Milwaukee runs north and south,
and Clybourn street, running east and west, crosses Fifth
street at right angles. Everett street, also referred to in the
testimony as an alley, runs east and west, ending at Fifth
street, and is about 175 feet north of Clybourn street. The
street railway tracks of the defendant descend a hill from
Sixth street to Fifth street on Clybourn, and at the foot of
Clybourn round a curve onto Fifth street and then proceed
north. The complaint alleged that on August 7, 1913, plaint-
iff was riding with his son in an automobile owned and driven
by the latter, traveling west on Everett street; that as they
approached Fifth street plaintiff and his son looked south a
distance of about 175 feet for a street car and that none was
in sight, and that while in the act of making the turn from
Everett street onto Fifth street to go north, an electric car
coming from the south struck the automobile and plaintiff
was thrown against the windshield of the machine and in-
jured. The complaint charged the defendant with negligence
in operating the street car at great speed and without any
warning signal. The answer was a general denial. At the
close of the evidence, on motion of defendants' counsel, the
civil court directed a verdict for the defendants. On appeal
to the circuit court the judgment of the civil court was re-

versed and a new trial granted, and from the order granting a new trial this appeal is taken.

For the appellants there was a brief by *Edgar L. Wood,* attorney, and *Bull & Johnson,* of counsel, and oral argument by *Mr. Wood.*

*W. C. Seefeld,* for the respondent.

BARNES, J.   The plaintiff's son, who was driving the automobile, testified that he looked to the south as soon as he emerged from the alley and had a clear view, and that there was no street car in sight; that he was going about six miles an hour and turned north, and after proceeding northward from fifteen to twenty-five feet his auto was overtaken and struck by a north-bound street car.   The plaintiff testified that he kept looking to the south after the auto emerged from the alley until it turned to the north, and that the street car was not within sight.   He agreed with his son as to the point of collision.   It was a little past 5 o'clock on the afternoon of August 7th, and there were no teams to obstruct the view. There is some dispute as to how far the street car would have to travel after coming within the range of vision of plaintiff and his son and until it proceeded as far north as the alley. As we understand the evidence, plaintiff places this distance at 241 feet and defendants place it at 300 feet.   There is some obscurity in the testimony on this point, and we are not sure that we are giving the exact claims of the parties, but the variance, if there is any, is not substantial.

The defendants' contention in regard to the accident was that the auto came out of the alley at a high rate of speed as the car was approaching; that the motorman, supposing the auto was going to cross the track in front of the car, applied the brake and checked the speed; that the auto, instead of crossing, turned north and came to a standstill, or nearly so, and that the car, before it could be brought to a full stop, struck the fender of the auto and dented it.   The force of the

collision threw the plaintiff against the glass windshield.
The auto was not broken and apparently was not much in-
jured.   The evidence on the part of defendants tended to
show that the car was proceeding slowly from the time it
turned onto Fifth street until the collision occurred.   Four
witnesses testified that the car stopped after rounding the turn
from Clybourn to Fifth street and discharged passengers.
No witness testified that the car did not make this stop.   The
building at the northwest corner of the Clybourn and Fifth
street crossing was rounded or cut away at the corner to some
extent, so that a person coming out of the alley could see up
Clybourn street to the west some distance.   After the defend-
ants rested the plaintiff's son was recalled and said that since
giving his first testimony he had gone back and examined the
*locus in quo* and was satisfied that he had made a mistake in
locating the point of collision and that it actually occurred
sixty-two feet north of the alley.   He fixed this point by ref-
erence to a pole in the street.

If we accept as an established fact in the case the stoppage
of the car at the corner of Clybourn and Fifth streets, we
think the plaintiff made no case.   It seems impossible that
the car could descend the Clybourn-street hill, make the stop,
and overtake the auto while it was going northward even the
sixty-two feet last claimed.   The plaintiff was looking until
the auto turned north.   The car would have to travel between
four and five times as far as the auto did in order to overtake
it, and of course four or five times as fast if it made no stop.
The driver's estimate of five or six miles an hour may not be
strictly accurate.   He referred to the rate of speed at which
he was going as "creeping," but inasmuch as the auto was
good for twenty-five miles an hour, this language is not very
significant, and can hardly be understood as qualifying his
repeated statement that he knew he was going five or six miles
an hour.   When we consider that the curve would have to be
rounded slowly, that it would require some time to stop and

let passengers off, that it would take a little time to get under motion, and again some time to slow down the car to almost a standstill, and that this all had to be done in about 300 feet and while the auto was going less than seventy feet, it is apparent that the car would have to travel a part of the time at an unheard-of rate of speed in order to overtake the auto.   If we were to assume that the auto traveled seventy feet after the plaintiff last looked before it was struck and that its average speed was only five miles an hour, it would make the distance in about seven seconds.   But we do not think it can be said as a matter of law that the car did stop at the corner.   Either the evidence of defendants' witnesses that it did stop or that given by the plaintiff and his son is untrue.   The statements cannot be reconciled.   If the jury elected to believe the plaintiff and his son, they should necessarily disbelieve that offered by the defendants.   This they might do.   Where, as here, credible witnesses for the defendant testify to an independent fact, and there is no evidence to the contrary, their testimony cannot be disregarded.   But where witnesses for the plaintiff testify to other matters which if true necessarily show that the evidence of defendant's witnesses is not true, a jury question is presented.   This is well illustrated at times in criminal cases where one or more witnesses testify that they saw the accused commit an offense at a certain time and place, while he produces evidence to show that he was at an entirely different place when the crime was committed.   The witnesses on one side or the other are not telling the fact, and it is for the jury to say where the truth lies.   *Schuster v. State,* 80 Wis. 107, 49 N. W. 30.   The evidence of plaintiff and his son on this point is not negative testimony.   They were looking for a car.   There was nothing to obstruct their view.   There is no claim that the light was not good.   They could have seen the car if it had been in sight.   They did not see it.   Accepting those statements as true, the conclusion logically and

necessarily follows that the car was not in sight while they were looking.

If we were to accept as true the evidence given by defendants' witnesses and of those sworn on behalf of the plaintiff on direct examination in reference to the point of collision, it would be difficult to say that the case presented a jury question even if the car did not stop at the crossing. On the basis of this evidence, the street car would have had to move at an average speed of about seven times as great as that of the auto in order to overtake it. It is hardly credible that the car could have slowed up for the turn and then have slowed down almost to a standstill when the auto was hit and still have acquired the necessary speed to overtake the auto while it was going from fifteen to twenty-five feet.

The only thread on which the plaintiff's case hangs is the evidence given by the plaintiff's son on rebuttal. We cannot say that it is incredible that the car running at an excessive and negligent rate of speed could not have been out of sight when the auto turned north and still have overtaken the auto while it was traveling sixty-two feet, provided no stop was made at the corner. The thread is a pretty slender one, so slender that if the judgment of the civil court had been affirmed we probably should not disturb it. Several witnesses for the defendants, as well as the plaintiff himself, contradict the son, and the latter agreed with the other witnesses when first examined. He made at least a plausible explanation for the change made in his evidence, which a jury might accept. It can hardly be said that the evidence is inherently incredible, and, unless it can be, the jury might find that it was true, although the evidence greatly preponderated the other way. Verdicts have been upheld in a number of cases that were about as contrary to the clear preponderance of the evidence as would be a verdict for the plaintiff in the present case. *Hardy v. Milwaukee St. R. Co.* 89 Wis. 183, 61 N. W.

771; *Bading v. Milwaukee E. R. & L. Co.* 105 Wis. 480, 81 N. W. 861; *Collins v. Janesville,* 117 Wis. 415, 94 N. W. 309; *Suckow v. State,* 122 Wis. 156, 99 N. W. 440; *Champane v. La Crosse City R. Co.* 121 Wis. 554, 99 N. W. 334; *Baermann v. Chicago & M. E. R. Co.* 153 Wis. 235, 140 N. W. 1119.

*By the Court.*—Order affirmed.